UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

ANGELA D. ENGLE,   Case No. 1:10-cv-83

  Plaintiff,   Barrett, J.
               Bowman, M.J.
 v.

MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL SECURITY,

  Defendant.

**REPORT AND RECOMMENDATION**

Plaintiff Angela Engle filed this Social Security appeal in order to challenge the Defendant's findings that she is not disabled. *See* 42 U.S.C. §405(g). Proceeding through counsel, Plaintiff presents two claims of error, both of which the Defendant disputes. As explained below, I conclude that the ALJ's finding of non-disability should be affirmed, because it is supported by substantial evidence in the administrative record.

**I. Summary of Administrative Record**

On March 10, 2006, Plaintiff filed an application for Supplemental Security Income (SSI). In her application, Plaintiff alleges a disability onset date of December 1, 2005, due to "Ricketts,[1] arthritis, cyst[s] in legs" that result in "swelling and leg pain," an inability to stand for "very long," and difficulty in walking (Tr. 75). She was 39 years old at the time she sought disability benefits. After Plaintiff's claims were denied initially

---

[1]More commonly spelled "Rickets," Rickets is a disorder caused by a lack of vitamin D, calcium, or phosphate that leads to a softening of the bones in children. *See* www.nlm.nih.gov/medlineplus/ency/article/000344.htm.

1

and upon reconsideration, she requested a hearing *de novo* before an Administrative Law Judge. On February 12, 2009, an evidentiary hearing was held in Cincinnati, Ohio, at which Plaintiff appeared and was represented by counsel. (Tr. 336-373). At the hearing, ALJ Samuel Rodner heard testimony from Plaintiff and from Janice Bending, a vocational expert.

On April 23, 2009, the ALJ entered his decision denying Plaintiff's SSI application. (Tr. 10-21). The Appeals Council denied her request for review. (Tr. 5-8). Therefore, the ALJ's decision stands as the Defendant's final determination.

The ALJ's "Findings," which represent the rationale of the decision, were as follows:

1. The claimant has not engaged in substantial gainful activity since March 10, 2006, the application date (20 CFR 416.971 *et seq.*).

   ……………………….

2. The claimant has the following severe impairments: ...
   The objective medical record supports a finding that the claimant has definite and measurable work limitations due to bilateral leg and ankle pain, bilateral hip pain, lower back pain, and left knee pain status post femoral staple epiphysiodesis as a child and removal of staples from the left knee on February 14, 2006...as a result of congenital Ricketts. She thus has severe physical impairment[s] due to those conditions. The record further supports a finding that the claimant has definite and measurable work limitations due to depression, borderline intellectual functioning, and a history of alcohol abuse with reported sobriety for over 19 years. She therefore also has severe psychological impairment.
   …………………….

3. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.925, and 416.926).
   ………………………

4. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 416.967(a) except that she can only stand a

2

>half hour without a break and two hours total during the course of an eight-hour day. The claimant should be able to stand up for one or two minutes and stretch every hour. She can occasionally climb ramps and stairs, but can never climb ladders, ropes, or scaffolds. The claimant is limited to occasional balancing, stooping, and crouching and she can never kneel or crawl. She is limited to jobs involving simple one and two step job instructions, routine and repetitive tasks, and no constantly rapid pace.
>………………………..

5. The claimant has no past relevant work (20 CFR 416.965).

6. The claimant was born on March 31, 1966 and was 39 years old, which is defined as a younger individual age 18-44, on the date the application was filed (20 CFR 416.963).

7. The claimant has a limited education and is able to communicate in English (20 CFR 416.964).

8. Transferability of job skills is not an issue because the claimant does not have past relevant work (20 CFR 416.968).

9. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 416.969 and 416.969a).
   ..............................

10. The claimant has not been under a disability, as defined in the Social Security Act, since March 10, 2006, the date the application was filed (20 CFR 416.920(g)).

(Tr. 15-20).

On appeal to this court, Plaintiff maintains that the ALJ erred by: 1) improperly dismissing the findings of three treating physicians; 2) inadequately assessing Plaintiff's pain and credibility.

## II. Analysis

### A. Judicial Standard of Review

To be eligible for SSI a claimant must be under a "disability" within the definition of the Social Security Act. *See* 42 U.S.C. §1382c(a). The definition of the term

"disability" is essentially the same for both disability insurance benefits (DIB) and SSI. *See Bowen v. City of New York*, 476 U.S. 467, 469-70 (1986). Narrowed to its statutory meaning, a "disability" includes only physical or mental impairments that are both "medically determinable" and severe enough to prevent the applicant from (1) performing his or her past job and (2) engaging in "substantial gainful activity" that is available in the regional or national economies. *See Bowen*, 476 U.S. at 469-70 (1986).

When a court is asked to review the Commissioner's denial of benefits, the court's first inquiry is to determine whether the ALJ's non-disability finding is supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (additional citation and internal quotation omitted). In conducting this review, the court should consider the record as a whole. *Hephner v. Mathews*, 574 F.2d 359, 362 (6th Cir. 1978). If substantial evidence supports the ALJ's denial of benefits, then that finding must be affirmed, even if substantial evidence also exists in the record to support a finding of disability. *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994). As the Sixth Circuit has explained:

> The Secretary's findings are not subject to reversal merely because substantial evidence exists in the record to support a different conclusion . . . . The substantial evidence standard presupposes that there is a 'zone of choice' within which the Secretary may proceed without interference from the courts. If the Secretary's decision is supported by substantial evidence, a reviewing court must affirm.

*Id.* (citations omitted).

In considering an application for disability benefits, the Social Security Agency is guided by the following sequential benefits analysis: at Step 1, the Commissioner asks if the claimant is still performing substantial gainful activity; at Step 2, the Commissioner

4

determines if one or more of the claimant's impairments are "severe;" at Step 3, the Commissioner analyzes whether the claimant's impairments, singly or in combination, meet or equal a Listing in the Listing of Impairments; at Step 4, the Commissioner determines whether or not the claimant can still perform his or her past relevant work; and finally, at Step 5, if it is established that claimant can no longer perform her past relevant work, the burden of proof shifts to the agency to determine whether a significant number of other jobs which the claimant can perform exist in the national economy.  *See Combs v. Commissioner of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006); 20 C.F.R. §§404.1520, 416.920.

A plaintiff bears the ultimate burden to prove by sufficient evidence that he or she is entitled to disability benefits.  20 C.F.R. § 404.1512(a).  A claimant seeking benefits must present sufficient evidence to show that, during the relevant time period, she suffered an impairment, or combination of impairments, expected to last at least twelve months, that left her unable to perform any job in the national economy.  42 U.S.C. § 423(d)(1)(A).  In this case, Plaintiff alleges that the two identified errors at the fifth step of the sequential analysis require this court to reverse the Commissioner's decision.

### B.  The ALJ's Rejection of Treating Physicians' Opinions

In her first assignment of error, Plaintiff complains that the ALJ improperly rejected the opinions of three of Plaintiff's treating physicians: Dr. Nayak, Dr. Siddiqui, and Dr. Kahn.  20 C.F.R. § 404.1527(d)(2) provides: "[i]f we find that a treating source's opinion on the issue(s) of the nature and severity of your impairment(s) *is well-supported by medically acceptable clinical and laboratory diagnostic techniques* and is

5

not inconsistent with the other substantial evidence in your case record, we will give it controlling weight." *Id.* (emphasis added).

Plaintiff refers to various records by the three physicians to argue specifically that: 1) Plaintiff suffers from severe migraines that were not recognized as a severe impairment by the ALJ; and 2) the remainder of Plaintiff's severe impairments, including back, hand, and arm pain, support her disability claim. However, as Defendants note, the medical records do not contain any *specific* opinions or evidence that the ALJ disregarded or rejected. None of the referenced physicians opined on the issue of Plaintiff's alleged disability, or referred to Plaintiff's allegedly disabling migraines, or to severe hand and arm pain. Nevertheless, Plaintiff argues that the ALJ erred by ignoring or rejecting some evidence in the treating physicians' records that, at least by inference, supports her claims.

### 1. Dr. Nayak

Plaintiff did not claim back pain or migraines in her initial SSI application (Tr. 75). In an appeal of the denial of benefits dated January 23, 2007, Plaintiff continued to complain primarily of left knee and leg pain. However, the appeal form also contains- apparently for the first time- a reference to having been prescribed medication for migraines, and to having received "shots in my spine" for post-surgical leg pain. (*See* Tr. 120-121).

Plaintiff now argues that Dr. Nayak's records support a conclusion that Plaintiff suffers from disabling back pain, because he noted a "small disc protrusion at L5-S1 without definite nerve root compromise, although this material does lie adjacent to the right S1 nerve root." (Tr. 175). The same MRI report reflects "[m]oderate facet

6

hypertrophy" in "mid and lower lumbar spine." (Id.). Plaintiff contends that this supports her claim of disabling pain. However, a diagnosis, in and of itself, is not conclusive evidence of disability because it does not reflect the limitations, if any, that it may impose upon an individual. *See Young v. Secretary of Health and Human Services*, 925 F.2d 146, 151 (6th Cir. 1990); *Wallace v. Astrue*, 2009 WL 6093338 at *8 (6th Cir. December 1, 2009).

In this case, not only did Dr. Nayak fail to offer any opinion supporting Plaintiff's claim of disabling back pain, but his records reflect that Plaintiff's primary complaint was of left knee pain that was not back-related. Dr. Nayak opined that her knee and leg pain was most likely "probable reflex sympathetic dystrophy" and not the result of Plaintiff's herniated disc. (Tr. 175). While Dr. Nayak describes Plaintiff's post-surgical complaint of "pain to light touch and signs of reflex sympathetic dystrophy versus lumbar radiculopathy" as "concerning," he opines that most of Plaintiff's pain "seems to be coming just from neurogenic causes." (*Id.*). He recommends follow-up testing and "lumbar epidural steroid injections versus lumbar sympathetic block and medications to try to control her neurogenic pain," with a cortisone injection in the knee if needed. On April 13, 2006, Dr. Nayak prescribed Elavil for Plaintiff's "possible neurologic pain" in her post-operative left knee.

In short, while Dr. Nayak's records do reflect a suspicion of neurogenic pain in Plaintiff's left knee with (possibly) some associated back pain, the records do not support Plaintiff's testimony of disabling back pain. An MRI of Plaintiff's lower spine dated April 29, 2006 shows only "mild" findings, except for "moderate facet arthropathy." (Tr. 180). The only disc involvement is described as small and without direct nerve involvement, and no spinal stenosis or other significant abnormality is identified. (*Id.*).

7

Two references in Dr. Nayak's records deserve additional mention. First, Plaintiff reported no numbness, tingling, or paresthesia prior to her knee surgery on February 10, 2006. (Tr. 150). This record specifically undercuts Plaintiff's present contention that bilateral hand and arm pain and numbness prevent her from lifting objects. In addition, on February 14, 2006, Plaintiff reported that she did not have and had never experienced migraine headaches. (Tr. 153).

Importantly, Dr. Nayak's records do not contain any opinion on the extent to which Plaintiff's leg pain disables her, nor did he opine on any functional limitations caused by Plaintiff's pain. Of course, ultimately the determination of a claimant's residual functional capacity (RFC) is "reserved to the Commissioner." 20 C.F.R. §404.1527(e)(2). In this case, Plaintiff fails to point out any specific opinion of Dr. Nayak that the ALJ failed to take into consideration regarding Plaintiff's functional limitations. The ALJ committed no error, because the functional limitations he found were consistent with Dr. Nayak's opinions concerning Plaintiff's leg and back pain, and Dr. Nayak's records do not support additional limitations caused by migraine headaches or hand/arm pain. *See generally Blacha v. Secretary of Health and Human Services*, 927 F.2d 228, 230-31 (6th Cir. 1990)(affirming finding of non-disability despite herniated disc and degenerative arthritis in the spine).

### 2. Dr. Siddiqui

Plaintiff also relies upon treatment records from Dr. Siddiqui as evidence of disabling back pain. Dr. Siddiqui's August 14, 2006 letter of reference to Dr. Nayak, with an attached MRI report, evidences Plaintiff's self-report of "fatigue, weakness,

8

weight loss,[2] and night sweats." (Tr. 183).  Plaintiff also reported decreased sleep, decreased range of motion, muscle weakness and muscle pains, and headaches.  (*Id.*).  Dr. Siddiqui diagnosed low back pain from a herniated disc at L-5 S1, and assessed "[a] question of CRPS, Type I," an apparent reference to early stages of complex regional pain syndrome.  Although Plaintiff seizes on the suggestion of CRPS, neither Dr. Siddiqui nor any other physician ever definitively made or confirmed that diagnosis.

Plaintiff also argues that Dr. Siddiqui's notes support a diagnosis of disabling migraines, as well as disabling arm and hand pain.  However, there is absolutely no medical evidence in the record to support Plaintiff's claims of disabling migraines in Dr. Siddiqui's notes or elsewhere.   Rather, Dr. Siddiqui's notes and other medical records contain - at best - sporadic reference to ordinary "headache."  For example, on August 14, 2006, Dr. Siddiqui makes brief mention of Plaintiff experiencing headaches as a side effect of the Vicodin she had been prescribed for her back, hip and knee pain.  (Tr. 182).

### 3.  Dr. Kahn

Plaintiff argues that Dr. Kahn's notes reflect greater limitations than determined by the ALJ because Dr. Kahn noted decreased lower range of motion in Plaintiff's hips and knees bilaterally, as well as decreased range of motion in Plaintiff's lumbar spine, with mild tenderness to palpation in her paravertibral muscles.  (Tr. 321-326).  Relying upon the same MRI previously referenced, Dr. Kahn also noted the "small central disc protrusion at L5-S1 without definite nerve root compromise," and "moderate facet arthropathy in the mid and lower lumbar spine."  (Tr. 299).  Plaintiff argues that Dr.

---

[2]Plaintiff's objective medical records, as opposed to her self-report, reflect gradual weight gain, not weight loss.

9

Kahn's reports are "consistent with" a lack of post-surgical improvement in her leg condition. However, there is no evidence that Dr. Kahn considered Plaintiff's pain level or the limitations in her range of motion to be disabling.

Dr. Kahn did suggest a trial of Topomax to address Plaintiff's primary complaints of lower back, lower leg, pelvic and hip pain. (Tr. 299). He also recommended lumbar sympathetic blocks for Plaintiff's leg pain, but she reported she was unable to proceed at the time due to insurance issues. (*Id.*). When she was seen on August 28, 2008, she reported ordinary headache, but no tingling or numbness. (Tr. 300).

Plaintiff alleges that she was later prescribed "Topomax as treatment for her recurring migraines," but the referenced medical records from Dr. Kahn contain no suggestion of migraines. Dr. Khan's September 15, 2008 note briefly references "headache Yes" without explanation as the type, frequency, or severity. (Tr. 298). Also contrary to Plaintiff's suggestion, the Topomax appears to have been prescribed by Dr. Kahn for Plaintiff's primary complaint of leg pain. (Tr. 299). Dr. Kahn's July 3, 2008 note contains a similar single-word admission of headache, (Tr. 304), with Plaintiff's primary complaint noted to be leg, back and hip pain. (Tr. 305). A December 18, 2008 note also simply states "Yes" to headache, but notes no tingling or numbness, and no weakness in Plaintiff's arms or legs. (Tr. 321).

Pursuant to Dr. Kahn's suggestion, Plaintiff eventually underwent a lumbar sympathetic block and two lumbar epidural injections at the end of 2006 or early in 2007. A report dated April 27, 2007 reflects Plaintiff's report that the procedures "helped for 6 mos." but that Plaintiff could not afford additional treatment due to her lack of insurance coverage. (Tr. 318).

### 4. Other Evidence of Migraines and/or Disabling Arm and Hand Pain

Although Plaintiff's statement of errors argues only that the ALJ erred by rejecting the opinions of Drs. Nayak, Siddiqui, and Kahn, the undersigned has reviewed additional medical records to ensure that substantial evidence supports the ALJ's rejection of Plaintiff's assertion of disabling migraines and functional limitations due to bilateral arm and hand pain. (Tr. 16). As a whole, the medical records support the ALJ's findings.

For example, although Plaintiff reported headaches to her primary care physician on September 2, 2005 (Tr. 290), at a follow-up appointment on September 27, 2005 she reported that her headaches and dizziness were "[d]ecreasing at this point and time." (Tr. 289). Her physician suggested that she look into the possibility of mold contamination in her apartment, since "[a]ll studies so far have been negative including MRI and CT." (*Id.*). On October 31, 2005, Plaintiff complained of headaches, which her physician attributed "[p]ossibly due to need for glasses." (Tr. 288). The records contain no reference whatsoever to severe *migraine* headaches. In addition, at appointments on April 17 and July 6, 2007, Plaintiff denied *any* problems with headaches. (Tr. 285-286).

On December 13, 2007, Plaintiff reported headaches, among a host of other ailments, but noted only intermittent "paresthesia of the upper extremities." (Tr. 284). Although Plaintiff claims to have been prescribed Imitrex for migraines by Dr. Siddiqui at some point in 2006,[3] that prescription was not continued.

---

[3] Plaintiff does not cite to where in Dr. Siddiqui's medical records this diagnosis or prescription is located, and this Court was unable to find the referenced record.

11

At an Emergency Room visit on 8/24/2005 that includes a relatively rare reference to tingling in her arms and/or hands, Plaintiff denied suffering from any headaches. (Tr. 248). The attending physician suspected the tingling to be a side effect of Plaintiff's over-the-counter dietary supplement. (*Id.*). The ER visit was focused on heart symptoms, not arm or hand pain, and other medical records are silent as to Plaintiff's present claim of disabling arm/hand pain and paresthesia. EMG testing in November 2005 was negative for carpal tunnel syndrome, polyneuropathy, or radiculopathy in the legs, and supported only "mild" or "slight" changes in finger and wrist flexion (C8 and C6 myotomes). (Tr. 146).

In sum, neither the three physicians upon whom Plaintiff now relies nor any other treating source provided an assessment of Plaintiff's functional capacity or an opinion that they believed Plaintiff to be totally disabled due to pain or other limitations. Even if they had, "the determination of disability is the prerogative of the [Commissioner], not the treating physician." *Harris v. Heckler*, 756 F.2d 431, 435 (6th Cir. 1985). The only assessment of Plaintiff's functional abilities before the ALJ was completed by a state consulting physician, upon which the ALJ placed "[g]reat weight." (Tr. 19). In the absence of any contrary objective medical evidence to support greater limitations, it was not error for the ALJ to rely upon the consulting physician's assessment of Plaintiff's RFC. *See also Duncan v. Secretary of Health and Human Serv.*, 801 F.2d 847, 853-854 (6th Cir. 1986)(ALJ 's determination that pain not disabling supported by substantial evidence where objective evidence, including x-rays, showed only "mild" deformities, no physician evaluated plaintiff as incapable of performing light work, and no physician diagnosed pain as severe or disabling).

### C. Credibility Assessment and Evaluation of Pain

Plaintiff's second statement of error finds fault with the ALJ's conclusion that her testimony was not entirely credible. The ALJ found Plaintiff to be

> a partially but not fully credible witness. No treating source has found the claimant to be disabled, and there has been no independent, third party corroboration of the claimant's allegations. She has a poor earnings record, and no inference can be made on the basis of her work history that the claimant would be working if she could.

(Tr. 18). In finding Plaintiff to be only "partially" credible, the ALJ discounted Plaintiff's claim of disabling pain, her claim that she suffers from incapacitating migraine headaches three times per day on most days (Tr. 15), her claim of hand and arm limitations, and her claimed inability to walk without the use of a walker. Plaintiff asserts that the ALJ failed to consider medical records that reflect a herniated disc and other problems (including her congenital Rickets), all of which Plaintiff alleges could be expected to produce the type of significant pain and limitations to which she testified.

As discussed above, I find no error in the ALJ's consideration of the objective medical records. With respect to Plaintiff's reported pain level, the ALJ specifically noted the lack of any "independent, third party corroboration of Plaintiff's allegations" of disabling pain, as well as inconsistent statements in Plaintiff's medical records concerning her pain level (Tr. 18, noting Exhibit 11F at 12, 18). He determined that, although Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms," "the claimant's statements concerning the intensity, persistence and limiting effects of those symptoms are not credible to the extent that they are inconsistent with the above residual functional capacity assessment." (Tr. 18-19).

13

In addition to the records specifically noted by the ALJ, the undersigned finds the existence of additional support for the ALJ's rejection of Plaintiff's reported pain level. For example, on August 14, 2006, Plaintiff rated her pain at a "4 out of 10." (Tr. 182). On December 18, 2008, she rated her pain at a "5/10," with increases upon movement, but decreases "with medications without side effects." (Tr. 321). On the same date, Plaintiff reported that her pain was generally "stable." (*Id.*).

Consistent with the ALJ's determination of Plaintiff's "poor" work history, Plaintiff reported to a state consulting psychologist that she has been unemployed for five years, that the longest she worked in any one job setting was six months, and that most of her life she "stayed home to raise her children." (Tr. 186). Plaintiff reported activities of daily living as including doing "chores with help from her son and boyfriend," that she "cooks, " "goes shopping with her boyfriend, "watches TV and listens to the radio," and that she "enjoys her grandson." (*Id.*). She further reported that she "does not take naps but occasionally rests," "goes to bed around midnight," and rises at 7:00 a.m. (*Id.*).

A disability claim can be supported by a claimant's subjective complaints, as long as there is objective medical evidence of the underlying medical condition in the record. *Jones v. Comm'r of Soc. Sec.*, 336 F.3d at 475. However, "an ALJ is not required to accept a claimant's subjective complaints and may properly consider the credibility of a claimant when making a determination of disability." *Id.* at 476. (citations omitted). An ALJ's credibility assessment must be supported by substantial evidence, but "an ALJ's findings based on the credibility of the applicant are to be accorded great weight and deference, particularly since an ALJ is charged with the duty of observing a witness's demeanor and credibility." *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997). Further, a credibility determination cannot be disturbed "absent a compelling

14

reason." *Smith v. Halter*, 307 F.3d 377, 379 (6th Cir. 2001). Thus, it is proper for an ALJ to discount the claimant's testimony where there are contradictions among the medical records, her testimony, and other evidence. *Warner v. Comm'r of Soc. Sec.*, 375 F.3d at 392.

Substantial evidence supports the ALJ's conclusion that Plaintiff's claimed limitations conflict with the medical evidence in the record. Because the severity of Plaintiff's reported level of pain was not supported by any medical evidence, it was proper for the ALJ to discount the credibility of her account. As previously noted, the issue is not whether the record could support a finding of disability, but rather whether the ALJ's decision is supported by substantial evidence. *See Casey v. Sec'y of Health & Human Servs.*, 987 F.2d 1230, 1233 (6th Cir. 1993). Given the great deference to an ALJ's credibility assessment, I find no error in the ALJ's decision to discredit Plaintiff's statements about the severity of her symptoms.

### III. Conclusion and Recommendation

For the reasons explained herein, **IT IS RECOMMENDED THAT** Defendant's decision be found to be **SUPPORTED BY SUBSTANTIAL EVIDENCE**, and be **AFFIRMED**, and that this case be **CLOSED.**

      */s Stephanie K. Bowman*
      Stephanie K. Bowman
      United States Magistrate Judge

15

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

ANGELA D. ENGLE,                      Case No. 1:10-cv-83

       Plaintiff,                             Barrett, J.
                                             Bowman, M.J.
  v.

MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL SECURITY,

       Defendant.

**NOTICE**

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to this Report & Recommendation ("R&R") within **FOURTEEN (14) DAYS** of the filing date of this R&R. That period may be extended further by the Court on timely motion by either side for an extension of time. All objections shall specify the portion(s) of the R&R objected to, and shall be accompanied by a memorandum of law in support of the objections. A party shall respond to an opponent's objections within **FOURTEEN (14) DAYS** after being served with a copy of those objections. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).